## 29319. EXPOSITION COTTON MILLS *v.* CRAWFORD.

DECIDED FEBRUARY 20, 1942.   REHEARING DENIED MARCH 11, APRIL 2, 1942.

*John M. & James J. Slaton,* for plaintiff in error.

*William A. Thomas,* contra.

SUTTON, J.   Luther Crawford brought suit against Exposition Cotton Mills, a corporation, and S. A. Ferrell to recover damages because of injuries sustained by him on account of an alleged unauthorized assault and battery upon him by Ferrell, manager of the corporation's store operated by it upon its premises for the sale of dry goods and groceries to its employees and the general public. The petition alleged that "about twelve o'clock on May 6, 1939, the plaintiff arrived at the front of said store, intending to enter and purchase groceries; that just at the instant that he caught hold of the front door of the store, Ferrell, acting for himself and on behalf of his employer, closed the door while plaintiff was standing on the premises thereof; that while Ferrell was more thoroughly securing, closing, and fastening the door the plaintiff uttered a harmless exclamation, expressing his personal regret and discomfort at having been shut out of the store at that time; that his expression was not directed towards any one, and it was peaceable and a spontaneous utterance of his misfortune, but that at the very instant of its utterance Ferrell, acting on his own behalf and while in line of duty in behalf of the employer, seized a certain piece of iron four and a half feet long, two inches wide, and more than one fourth of an inch thick, commonly used as a bar for said

door, and did furiously, suddenly, with malice, and without any provocation whatsoever, open the door and strike plaintiff on the top of his cranium, injuring him in described respects." It was further alleged that the defendant was negligent in employing Ferrell, who is a highly fractious, nervous, and dictatorial type of man, possessing an unusually and abnormally high temper, and at the time he was employed the defendant corporation knew or could have known that he was as he is alleged to be, and would likely strike any employee or member of the public on slight provocation or no provocation, and that it could, during Ferrell's employment, have discovered, by the exercise of ordinary care, his incompetency and dangerous character.

The defendants filed general and special demurrers. The court sustained the general demurrer of the defendant corporation, and in *Crawford* v. *Exposition Cotton Mills,* 63 *Ga. App.* 458 (11 S. E. 2d, 234), to which reference may be had for a full statement of the pleadings, this court reversed the judgment of the trial court, and in the opinion it was said: "The plaintiff was an invitee, and was entitled to protection as such from the defendant and its employees in charge of the store. Just as the plaintiff approached the store, and before he could enter the door of the store as a customer of the defendant, the defendant's authorized agent, who was the manager of the defendant's store, *and who was keeping the door,* shut it in the plaintiff's face and prevented an entry therein by the plaintiff. Upon the plaintiff's expressing a personal regret upon reaching the door *when the door was being closed in his face,* by the 'utterance of some harmless exclamation,' the defendant's agent in charge of the store and keeping the door assaulted the plaintiff. *The plaintiff's exclamation was clearly connected with and grew out of the act of the defendant's agent in closing the door.* If such agent, in resentment of the plaintiff's exclamation or by reason thereof, hit the plaintiff as alleged, it was a question for the jury whether the assault 'was so closely connected with the authorized transaction of the company's business as to render the company liable for the wilful acts of its servants.' See *Schwartz* v. *Nunnally Co.,* 60 *Ga. App.* 858 (5 S. E. 2d, 91). Moreover, the plaintiff's case is strengthened by the fact that it appears from the allegations in the petition that the defendant's agent, who was manager of the store and *keeping the door thereof at the time,*

was, with the knowledge of the defendant and without the knowledge of the plaintiff, possessed of 'an unusually and abnormally high temper . . and would likely strike any employee or member of the public on slight provocation or no provocation at all.'" (Italics ours.)

Thereafter the plaintiff rewrote his petition to meet certain special demurrers of the defendant corporation and dismissed as to Ferrell. In the rewritten petition it was alleged, in reference to the happenings after he reached the door of the store, that he pulled open the screen door and placed his foot upon the base of the solid door partly inside of the store, with the intention of entering, and just at that instant Ferrell, acting for himself and the defendant corporation, slammed and closed the solid door, and that while Ferrell was more thoroughly securing, closing, and fastening the solid door the plaintiff uttered a harmless exclamation, the exact words of which he does not remember, but which, according to his best memory, information, and belief, he alleges to háve been "Well, I'll be dog," or "Well, I'm a son of a gun, if I'm not too late to get in;" expressing his personal regret and discomfort at having been shut out of the store at twelve o'clock, noon, Saturday, May 6, 1939, and that at the very instant of the utterance Ferrell, acting on his own behalf and while in line of duty in behalf of the defendant corporation, seized a piece of iron four and one half feet long, two inches wide, and more than one fourth of an inch thick, which said iron was commonly used as a bar for the door, and Ferrell did furiously, suddenly, and with malice and without any provocation whatsoever, open the door and strike the plaintiff on the top of his cranium, injuring and damaging him as elsewhere described in the petition. It was further alleged that the corporation was negligent in employing the said Ferrell, a highly fractious, nervous, and dictatorial type of man, possessing an unusually and abnormally high temper, and that at the time he was employed the defendant knew or could have known that he was as he is alleged to be, and would likely strike any invitee or member of the public on slight provocation or no provocation at all. Judgment was prayed for $5000 damages for pain and suffering and for $10,000 exemplary damages.

On the trial of the case the jury returned a verdict in favor of the plaintiff for $1000 and judgment was entered accordingly

The court overruled the defendant's motion for new trial, and the exception is to that judgment.

The defendant's store immediately adjoined Marietta Street, on which the plaintiff alighted from a street car, and the evidence showed conclusively that the store door had been closed before the plaintiff reached it for the avowed purpose of purchasing groceries. There was positive testimony that the plaintiff's arrival at the store was about fifteen minutes after twelve o'clock on Saturday, May 6, 1939, and, while one or two of the witnesses for the plaintiff testified that the occurrence complained of took place "around twelve o'clock," none professed to remember the exact time or denied that the door had been closed before the plaintiff appeared. The plaintiff himself testified that as he approached the store the door was open, and when he was "about three steps away" somebody said it was closing time; that he stepped aside to let some woman pass; that the door was "pushed to" as he walked up. In the first part of his testimony he stated: "On May 6, 1939, I walked up to the company's store of the Exposition Cotton Mills and pulled the screen door open *and pushed the door and it opened.*" (Italics ours.) The italicized words obviously refer to the solid door which the evidence showed to be behind the screen door, the latter opening outwardly and the solid door inwardly and being fastened only by an iron bar. The plaintiff testified that as he entered the store he was struck on the head by Ferrell and sustained described injury and damage. Ferrell testified by deposition to certain facts between the time of the approach by the plaintiff and his actual entrance into the store: "I closed the doors at twelve o'clock on the 6th day of May, 1939. . . One of my clerks, Grady Tolbert, was to bring me home, and also to bring a lady that worked in the store who lives on the way to my home. She had gotten out and gotten in the car across the street. I had gone to the drug department, and sat down on a box right by the window at the door, waiting for Grady to get his money. The door was shut and barred. Some one, I didn't know who at the time, came to the door and shook it. He shook the door first with his hand, and he called 'Grady, G-r-a-d-y,' and of course Grady did not answer. I didn't say anything at all because I had no idea of opening the door. Then it seemed as if he was shouldering the door, putting his shoulder against it, trying to force it.

. . I was not more than eighteen inches from the window, if that. . . I was about this far [indicating] from the window, sitting on the box, and he comes around and looks through like this [peering into the window with his face against the glass and his hand shading his eyes, as indicated by the witness]. He looked me right in the face and said, 'You son of a bitch.' Well, I jumped off the box, took down this bar, and stepped back, and in he came. He came towards me. He had to because there was just a little narrow passageway there. The expression on his face looked very much like a wild man to me, with his hair down on his forehead. I knew then, in fact I suspected before, he was drinking. Then I was almost positively sure, and he looked like a wild drunk man. He came directly towards me. I had taken down this bar, had it in my hand, and I struck him with it. . . I could not see Luther Crawford when he was knocking at the door. . . I had nothing against Luther Crawford at the time. The window that I was behind was just an ordinary window like this. There were bars on the outside of the window. The window was plate glass. There was no shutter on the outside of the window. . . When he looked in the window I said 'Closed up.'"

Miss Willie F. Vaughn testified for the defendant: "On this 6th day of May when this trouble occurred the store had closed. . . On that day a little after noon I was sitting in Mr. Tolbert's car. The car was sitting on the street just in front of the Exposition Cotton Mill store, just across the street from it. . . Mr. Crawford came down on the Inman Yard car and got off of the street car and rushed across to the door and knocked on the door. He called Grady once or twice, then went to the window and hit on the window. He said 'Grady, damn it, open the door.' Mr. Ferrell was sitting on the coal box there by the window, and that was about twenty minutes after twelve, and Mr. Ferrell said 'We have closed.' Mr. Crawford said 'You old gray-headed son of a bitch.' Mr. Ferrell opened the door, I presume he opened it, and Mr. Crawford rushed in. I didn't see him hit, but he came back out of the door with his face bleeding. . . There was not any one standing near, not any one at all. At the time he came to the door Mr. Ferrell was sitting inside on the coal box. The window was closed but I could see through the window. He was sitting there by the window. . . I say that when the plaintiff knocked

on the soda-fountain door and could not get in the door was closed. . . When this thing happened it was fifteen or twenty minutes past twelve o'clock. I had been sitting in the car about ten minutes. . . The reason I remember that it was about twenty minutes past twelve o'clock is because I had an appointment at 12:30 and I was running late. . . I think it was fifteen or twenty feet from the side of the car to the other side of the street. That was Mr. Tolbert's car."

The plaintiff, recalled to the stand, testified: "I didn't go to the window and stick my head in and look at Mr. Ferrell and say ¯You old gray-headed son of a so and so. I didn't go to the window at all."

According to the evidence Ferrell was a man of about 69 years of age, weighing 120 pounds, and afflicted with a cancer. He had been with the corporation about thirty years, and at the time of the incident complained of was weak and walked with difficulty. He was kind to the employees and sometimes extended them credit when they were unable to pay cash for merchandise, but there was some testimony that he was sometimes fractious, irritable, and would get real mad, but there was no evidence that he had ever struck anybody except in the case of the plaintiff. On the night following the altercation with the plaintiff, the plaintiff accompanied two others to the home of Ferrell, and there was testimony from them that there Ferrell stated to Crawford that Crawford called him a son of a bitch and that Crawford said that he did not call him a son of a bitch but had said "I am a son of a bitch," and Ferrell interceded for the plaintiff in the retention of his job, at which he worked thereafter for three days in each of two successive weeks, the work being slack at that time, and there was evidence that he performed the work as well as formerly.

Inasmuch as the case is reversed on certain special grounds of the motion for new trial, the court deems it unnecessary to determine whether or not the evidence was sufficient to authorize the verdict. Special ground 1 of the motion for new trial was abandoned in the brief of the plaintiff in error. Special ground 2 complained that the court erred in charging the jury, "If, on the other hand, you should believe that he [the plaintiff] himself was responsible for the trouble with the employee, because of unprovoked assault from him to the employee personally, and it was per-

sonally resented by the employee, upon his entrance, what he believed to be unprovoked or gratuitous insult, and was justified in so believing, then and in that event the company would not be liable;" it being contended that if Ferrell honestly believed an insult was offered to him personally his action in resenting it would be a personal matter and not render the defendant liable, regardless of whether or not he was justified in so believing. This excerpt must be taken in connection with language immediately preceding it in the charge, in which it is shown that the court was instructing the jury as to the law applying when one is an invitee: "If you believe that this plaintiff was assaulted by an agent of this company, while engaged in an act of business or proposed act of business, to which and for which he was then an invitee to come and transact, and that he was assaulted unlawfully and without provocation on the part of the plaintiff himself, then and in that event the defendant would be liable." The excerpt objected to was not in its context harmful to the defendant.

Special ground 3 complains that the court erred in failing to charge the jury without request as to mitigation of damages. The majority of this court are of the opinion that the ground is without merit. SUTTON, J., dissents for the reason that whether or not Ferrell was justified in striking the plaintiff, or the circumstances were such as to authorize a reduction in damages, were questions at issue in the case, and the court erred in the respect claimed. *Ransone* v. *Christian,* 49 *Ga.* 491 (4); *Conley* v. *Arnold,* 93 *Ga.* 823 (2), 825 (20 S. E. 762); *Thompson* v. *Shelverton,* 131 *Ga.* 714 (63 S. E. 220); *Robinson* v. *DeVaughn,* 59 *Ga. App.* 37, 52 (200 S. E. 213).

Ground 4 complains that the court erred in failing to charge the jury upon written request to charge as follows: "I charge you that in an action for damages on account of an assault and battery the defendant may give in evidence any opprobrious words or abusive language used by the plaintiff to its servant or agent, in order to justify the servant or agent's conduct or mitigate the damages, and it is for the jury to determine, in view of the character of the provocation and the nature and extent of the battery, whether such opprobrious words or abusive language amount to a justification or only to a mitigation of damages recoverable." The requested charge stated a sound proposition of law and was adjusted to the

evidence and was not given in substance in the charge of the court to the jury, and consequently the court erred in not charging as requested.

The court erred, as complained of in special ground 5, in failing to charge the jury, upon written request to charge, as follows: "I charge you that, in considering the question as to whether or not the battery was proportioned to the provocation, you may take into consideration the relative strength of the plaintiff and Ferrell." The request was sound as a principle of law and applicable to the facts of the case. The plaintiff was shown to be an able-bodied man of 34 years, while Ferrell was very weak and sixty-nine years of age and afflicted at the time with cancer. The relative strength of the two was a matter to be taken into consideration by the jury in connection with the use by Ferrell of an iron bar in striking the plaintiff and on the question of mitigation of damages.

The court did not err, as complained of in ground 6 of the motion for new trial, in failing to charge the jury, upon written request to charge, as follows: "I charge you that the master is not liable for an assault committed by his servant where such assault is only incidentally connected with the master's business."

Ground 7 of the motion for new trial, complaining that the verdict is excessive, does not require a ruling inasmuch as the case is being reversed. Ground 8, complaining that the court erred in failing to charge the jury that if they believed from the evidence that subsequently to the alleged battery by Ferrell the plaintiff condoned Ferrell's conduct, such condonation might be taken into consideration in mitigation of damages, is without merit for the reason that the evidence does not show any condonation by the plaintiff.

Ground 9 complains that the court erred in failing to charge the jury that if they determined that the plaintiff was entitled to recover they would be authorized to take into consideration, in mitigation of damages, the conduct of Ferrell in interceding, in behalf of the plaintiff, to prevent him from losing his job with the defendant. If the plaintiff was entitled to recover from the defendant on account of an unauthorized assault by Ferrell, his job should not reasonably be in jeopardy, and anything said by Ferrell to his employer must be considered, not as a favor, but something justly due to the plaintiff. This ground is without merit.

Ground 10, complaining of the admission of certain evidence, is without merit.

Ground 11 complains of the refusal of the court to grant a new trial because of alleged newly discovered evidence. Inasmuch as the judgment is being reversed, no ruling thereon is required.

Grounds 12 to 16, inclusive, complain of certain portions of the charge of the court and the failure of the court to charge the jury in certain particulars, the merit of all of which depends upon a consideration of the evidence or lack of evidence in the case, and no rulings are deemed necessary inasmuch as the judgment is being reversed.

*Judgment reversed. Stephens, P. J., concurs. Felton, J., dissents.*

STEPHENS, P. J., concurring specially. It appeared conclusively from the evidence that Ferrell was an employee and servant of the Exposition Cotton Mills, and that his duties were to guard the door of the store or commissary of the mills and to permit no one to enter after closing hours, and that, during the time when he was on duty and engaged in guarding the door he assaulted Crawford with a heavy instrument. If this assault and battery was inflicted on Crawford in furtherance of Ferrell's duties to guard the store and prevent persons from entering, and for the purpose of preventing Crawford's entrance, Ferrell was acting for and in behalf of the Exposition Cotton Mills, and his act in assaulting the plaintiff was the act of the Exposition Cotton Mills for which it would be liable. The testimony was sufficient to authorize a finding that Ferrell, as the servant of the Exposition Cotton Mills, and in furtherance of his duty as doorkeeper of the store to prevent persons from entering it, committed an assault and battery on Crawford. If Ferrell, in assaulting Crawford, did so in furtherance of his duty as doorkeeper of the store to prevent Crawford's entering the store, and if Crawford used opprobrious words to Ferrell which precipitated the assault and battery, without which Ferrell might not have assaulted Crawford, the act of Ferrell, nevertheless could have been the act of the Exposition Cotton Mills through Ferrell as the mills' authorized servant in the discharge of his duties. It is clearly inferable from the evidence of Crawford that Ferrell assaulted him for the purpose of preventing him from entering the store which Ferrell was guarding as doorkeeper. If Crawford,

in attempting to enter the store, exhibited a hostile and belligerent attitude towards Ferrell by the use of highly insulting and opprobrious words, an inference from the evidence is not demanded as a matter of law that if Ferrell assaulted Crawford as the result of the provocation inhering in the opprobrious and insulting words used by Crawford, Ferrell did so solely for the purpose of personal resentment to Crawford for the use of the opprobrious words; but the inference is authorized that Ferrell, in assaulting Crawford, did so in furtherance of Ferrell's duties as servant of the Exposition Cotton Mills in preventing the entrance of any one to the store, and found it necessary, and was provoked, to make the assault on Crawford by reason of Crawford's hostile and belligerent attitude in endeavoring to enter the store. It is therefore inferable that Ferrell, in the pursuit of his duty as servant of the Exposition Cotton Mills in guarding the store and preventing any one from entering, committed an assault on Crawford in furtherance of such duty by reason of the use by Crawford of insulting words.

In Bergman v. Hendrickson, 106 Wis. 434 (82 N. W. 304, 80 Am. St. R. 47), where a bartender assaulted and beat a customer who had ordered a drink and had not paid therefor, and who had used insulting language to the bartender, the court held: "In such a case the fact that the person assaulted conducted himself in an improper manner, calculated to arouse and bring on personal altercation with the bartender, and that the assault was wholly or in part the result of such misbehavior, does not relieve the employers from liability, if the bartender was acting within the scope of his duties." The court in that case approved a charge to the jury that if the bartender "was impelled to the assault, whatever words may have passed, by a purpose to enforce payment of the liquor bill that he was trying to collect, and committed the assault as incidental to such effort, the plaintiff should recover." See Limerick v. Roberts, 32 Ga. App. 755 (124 S. E. 806).

Where a person who is assaulted by a servant has directed opprobrious words to the servant because of his act in prosecuting the duties of his employment, the opprobrious words may be regarded as directed not only to the servant but to the employer. The employer, in a suit against it, by the person assaulted, may defend on any ground of justification or mitigation where such defense is permitted under the law by reason of opprobrious words used by

the person assaulted to the person committing the assault. If Crawford used the opprobrious words to Ferrell, as contended, it is inferable from the evidence that Crawford was provoked to use such words by Ferrell's conduct in the discharge of his duties in preventing Crawford's entering the store. If such opprobrious words were directed to Ferrell as the servant of the Exposition Cotton Mills because of Ferrell's discharge of his duties as such servant while acting in the scope of his employment, the Exposition Cotton Mills, in a suit against it by the person assaulted to recover damages, could set up such opprobrious words as a defense, in the opinion of the jury, either as a justification or in mitigation of any damages which might be recoverable.

Under the law of Georgia, where an assailant defends a suit for damages for an assault and battery on the ground that the party assaulted used abusive or opprobrious words to the assailant, it is a question for the jury whether or not, irrespective of the gravity or nature of the insulting character of the words, the assailant was justified. Our Code, § 26-1409, provides that the defendant in a criminal action for assault and battery "may give in evidence to the jury any opprobrious words, or abusive language, used by the prosecutor, or person assaulted or beaten; and such words and language may or may not amount to a justification, according to the nature and extent of the battery, all of which shall be determined by the jury." It is on the basis of justification for the assault and battery committed as a result of opprobrious words applied to the assailant given by this criminal statute, that a person who has inflicted a battery on another, may, in a civil suit, defend against the battery where he, the assailant, was justified under some rule of law. The Code, § 105-601, provides: "A physical injury done to another shall give a right of action, whatever may be the intention of the actor, unless he shall be justified under some rule of law." If an assailant, in a civil suit against him for assault and battery, asserts justification on the ground that the person assaulted used opprobrious words to him, it must necessarily be a question for the jury, irrespective of the character of the opprobrious words, whether or not there was a justification. Our Supreme Court in *Thompson* v. *Shelverton*, 131 *Ga.* 714 (63 S. E. 220), has expressly held, in a civil case approving an elaborate opinion by Mr. Justice Fish in *Berkner* v. *Dannenberg*, 116

*Ga.* 954, 963 (43 S. E. 463, 60 L. R. A. 559), as follows: "In an action for damages on account of an assault and battery, the defendant may give in evidence any opprobrious words or abusive language used by the plaintiff to him, in order to justify his conduct or mitigate the damages; and it is for the jury to determine, in view of the character of the provocation and the nature and extent of the battery, whether such opprobrious words or abusive language amount to a justification or only to a mitigation of damages recoverable."

It being inferable from the evidence, taken in its entirety, that Ferrell, in assaulting and beating Crawford was acting in furtherance of his duty to his employer in preventing Crawford from entering the store, and that he was provoked in making the assault by opprobrious words applied by Crawford to him, if the Exposition Cotton Mills was liable to Crawford for the assault the damages recoverable could be mitigated, in the discretion of the jury, by the opprobrious words which Crawford may have used to Ferrell. Therefore the court erred in failing to charge as requested by the defendant, as indicated in the opinion of the court by Judge Sutton, in which I have concurred.

Counsel for the Exposition Cotton Mills asserts very strenuously in his able brief and no less able argument that it appears from the evidence as a matter of law, without dispute, that Ferrell in hitting Crawford did so in resentment of a personal insult, and was not acting within the scope of his employment, and that therefore it appears as a matter of law from the undisputed evidence that the Exposition Cotton Mills is not liable. Counsel sites with seeming confidence and a great deal of plausibility certain decisions which seem to sustain his contention. Of course if it appeared as a matter of law from the evidence that the defendant was not liable to the plaintiff, the plaintiff could not recover, and there would be no evidence which would authorize the jury to find that there were mitigating circumstances which would authorize a reduction in damages. In my opinion the evidence is not conclusive as a matter of law that Ferrell, when he hit Crawford under the circumstances appearing from the evidence, went beyond the scope of his authority as servant of the Exposition Cotton Mills. Neither am I of the opinion that even if Ferrell in hitting Crawford was motivated by opprobrious words, these words in them-

selves as a matter of law establish the fact that Ferrell, in hitting Crawford, went beyond the scope of his authority as an agent or servant of the defendant.

FELTON, J. I dissent from the rulings as to grounds 4 and 5 of the motion for new trial. The charge given by the court was more favorable to the defendant in the court below than the charge requested and compained of as having been omitted. The court charged: "If, on the other hand, you should believe that he himself was responsible for the trouble with the employee, because of unprovoked insult from him to the employee personally, and it was personally resented by the employee, upon his entrance, what he believed to be an unprovoked, or gratuitous insult, and was justified in so believing, then and in that event, the company would not be liable." Furthermore, in my opinion the requests do not state the law. If Ferrell acted in good faith in resenting what he was justified in thinking was a personal insult, unprovoked, the company would not be liable and any question of mitigation would be a matter solely between Crawford and Ferrell. Under the circumstances of this case I do not think the court erred in failing to give the requested charge. I dissent from the judgment of reversal on the grounds stated.